1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TERRANCE FRAZIER, et al.,                No.  1:20-cv-01069-DAD-SAB

12              Plaintiffs,

13        v.                                  ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'
14   CITY OF FRESNO, et al.,                  MOTION TO DISMISS

15              Defendants.                   (Doc. No. 6)

16

17

18        This matter is before the court on defendants' motion to dismiss plaintiffs' complaint

19   pursuant to Federal Civil Procedure Rules 12(b)(1) and 12(b)(6) for lack of subject matter

20   jurisdiction and failure to state a claim upon which relief may be granted.  (Doc. No. 6.)  Pursuant

21   to General Order No. 617 addressing the public health emergency posed by the COVID-19

22   pandemic, defendants' motion was taken under submission on the papers.  (Doc. No. 7.)  For the

23   reasons set forth below, the court will grant in part and deny in part defendants' motion to

24   dismiss.[1]

25   _____

[1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
26   overwhelming caseload has been well publicized and the long-standing lack of judicial resources
     in this district long-ago reached crisis proportion.  That situation has now been partially addressed
27   by the U.S. Senate's confirmation of a new district judge for this court on December 17, 2021.
     Nonetheless, for over twenty-two months the undersigned was left presiding over approximately
28   1,300 civil cases and criminal matters involving 735 defendants.  Unfortunately, that situation

1

## BACKGROUND

2       On July 31, 2020, plaintiffs Terrance Frazier and Central Valley Community Sports

3   Foundation ("CVCSF"), (collectively, "plaintiffs"), filed this action against the City of Fresno,

4   Mayor Lee Brand, City Manager Wilma Quan, Assistant City Manager James Schaad, Chief of

5   Staff Tim Orman, and Does 1–20, inclusive (collectively, "defendants") in this court.  (Doc. No.

6   1.)  In their complaint, plaintiffs allege as follows.

7       Plaintiff CVCSF is a nonprofit public benefit corporation founded in 2015 whose goals

8   are to "provide sports and entertainment facilities and programs for the citizens of the Central

9   Valley."  (*Id.* at ¶ 5.)  Plaintiff Frazier describes himself as a "real estate investor, entrepreneur,

10  philanthropist, and community activist in the Central Valley."  (*Id.* at ¶ 4.)  Plaintiff CVCSF

11  represents that it is a "minority-founded entity," and plaintiff Frazier describes himself as an

12  African-American man.  (*Id.* at ¶¶ 4–5.)

13      On December 7, 2015, CVCSF entered into a twenty-five-year Ground Lease (the

14  "Lease") with the City of Fresno for CVCSF's tenancy in Granite Park, a "large, unused public

15  property" that "was costing the City of Fresno hundreds of thousands of dollars annually just to

16  maintain" and had accrued "significant deferred maintenance."  (*Id.* at ¶ 13.)  Among other terms

17  under the Lease, CVCSF agreed to make up to $2.7 million in capital improvements to Granite

18  Park in exchange for a $62,500 lease credit to be incurred annually by the City of Fresno.  (*Id.*)

19  As part of the Lease, the City of Fresno agreed to make "reasonable efforts" to provide recycled

20  water for the irrigation of Granite Park, which "otherwise would have to be irrigated by CVCSF

21  at significant expense."  (*Id.* at ¶ 14.)  According to plaintiffs, these cost-saving recycled water

22  provisions were "essential" to CVCSF's decision to enter into the agreement.  (*Id.*)

23      In addition to the Lease, the parties also entered into a Service Agreement relating to

24  recreational services and programming at Granite Park.  (*Id.* at ¶ 16.)  Under the Service

25  Agreement, the City of Fresno would pay an annual fee of $150,000.00 to CVCSF, and CVCSF

26

27  _____

    sometimes results in the court not being able to issue orders in submitted civil matters within an
    acceptable period of time.  This has been frustrating to the court, which fully realizes how
28  incredibly frustrating it is to the parties and their counsel.

would bear the cost of required maintenance, recreational activities, or programs at Granite Park. (*Id.* at ¶ 17.)  Plaintiff alleges that the $150,000.00 annual fee was "significantly less than the City of Fresno had been spending to maintain Granite Park in a minimal way for the prior several years" and that the parties recognized that the annual fee "would not come close to covering" the actual expenses CVCSF would incur in connection with maintaining the park and its programming.  (*Id.*)

The general terms of the Service Agreement specify that

> [r]ecords of [CVCSF's] expenses pertaining to this Agreement shall be kept on a generally recognized accounting basis and shall be available to CITY or its authorized representatives upon request during regular business hours throughout the life of this Agreement and for a period of three years after final payment . . . . In addition, all books, documents, papers, and records of [CVCSF] pertaining to this Agreement shall be available for the purpose of making audits, examinations, excerpts, and transcriptions for the same period of time.

(*Id.* at 53.)

According to plaintiffs, CVCSF raised over $2 million for capital improvements for the park, including "substantial personal funds" from plaintiff Frazier, and CVCSF complied with its recreational programming, maintenance, and security obligations under the Lease and Service Agreement.  (*Id.* at ¶ 18.)  The City of Fresno, on the other hand, exhibited a "lack of cooperation" with CVCSF's programming, maintenance, and security obligations; failed to make "any efforts" to provide recycled water for the park; and failed to grant permits for proposed billboards and signage at the park, which decreased CVCSF's anticipated revenue.  (*Id.*)  These actions and inactions by the City of Fresno led to CVCSF incurring larger losses in connection with Granite Park than it had anticipated, including $200,000 per year on water for Granite Park and costs from building connections to the City of Fresno's recycled water.  (*Id.* at ¶¶ 19, 36.)  As a result, in 2018, Mr. Frazier, on behalf of CVCSF, requested that the City of Fresno increase its annual fee under the Service Agreement to $300,000.00.  (*Id.* at ¶ 19.)

In response—and at the urging of defendants Mayor Brand, City Manager Quan, Assistant City Manager Schaad, and Chief of Staff Orman, (collectively, the "individual defendants")—the City of Fresno requested an audit of CVCSF's operational records relating to Granite Park.  (*Id.* at

¶ 20.)  Although the purported purpose of the audit was to justify the fee increase requested by plaintiffs, the individual defendants "insisted that the audit have the objective of uncovering proof of unlawful or unethical conduct by Mr. Frazier, rather than assessing the Granite Park project." (*Id.*)  Moreover, the individual defendants instructed the City Auditor to utilize an unreliable and subjective sampling method for the audit, rather than a randomized sampling method.  (*Id.*)

Seeking to expedite the renegotiation of the Service Agreement, CVCSF "promptly" provided the City of Fresno's auditors with several years of records, despite the records having not been fully reviewed by its accountant or attorneys.  (*Id.* at ¶ 21.)  Although the records were imperfect, they demonstrated that CVCSF's Granite Park project was running at a "genuine and substantial deficit."  (*Id.* at ¶ 22.)  In November 2018, the City of Fresno prepared a draft audit using the imperfect records and invited CVCSF to comment on various findings.  (*Id.*)  Upon review of the draft audit, CVCSF "conceded that its expedited information needed to be refined and finalized and therefore withdrew its request to renegotiate the Service Agreement" in late November 2018.  (*Id.* at ¶ 23.)  At that time, the City of Fresno informed plaintiffs that the audit would be "placed on hold" for six months.  (*Id.* at ¶ 24.)

Around the time that the City of Fresno circulated the draft audit, Mr. Frazier sued a former Fresno restauranteur, Sammy Franco, for the balance of an unpaid loan of approximately $300,000.00.  (*Id.* at ¶ 25.)  Mr. Franco then allegedly "took on Mr. Frazier through social media" in retaliation for Mr. Frazier's lawsuit.  (*Id.*)  In January 2019, with knowledge of the pending Granite Park audit, Mr. Franco submitted a Public Records Act request with the City of Fresno seeking a copy of the audit report.  (*Id.*)  At this time, only the draft audit report had been created. (*Id.*)  Under California Government Code § 36525(b)(2), papers and memoranda pertaining to incomplete audits are not public records.  (*Id.* at ¶ 26.)  At least one member of the City Auditor's Office expressed concern to the individual defendants regarding releasing the draft audit report due to its incomplete status.  (*Id.* at ¶ 27.)  Nevertheless—and despite knowing that the provisional findings in the draft audit were based on a "substandard sampling methodology" and that the release of the report would be "extremely damaging" to plaintiffs—the individual

/////

4

defendants "insisted" that the draft audit would be deemed final so that it could be disclosed to Mr. Franco.  (*Id.* at ¶¶ 27–29.)

According to plaintiffs, the draft audit report was thus released by the City of Fresno to Mr. Franco, who "immediately" posted the report on social media along with an attack on plaintiffs.  (*Id.* at ¶ 30.)  "Soon thereafter, the draft audit was prominently reported in the Fresno Bee."  (*Id.*)  Although defendants could have provided plaintiffs with advance notice of the audit report's impending release so that plaintiffs could have filed a reverse Public Records Act action to enjoin its release, defendants chose not to do so.  (*Id.* at ¶ 31.)

Following the release of the audit report, plaintiff Frazier repeatedly requested that defendants release a public statement advising that CVCSF is in good standing, but defendants refused his requests in that regard.  (*Id.* at ¶ 33.)  Defendant City of Fresno has also since disclosed that it has no system for delivering recycled water from its wastewater treatment plant to other sites, and it would cost millions of dollars to develop such a system.  (*Id.* at ¶ 36.)  As a result, at all relevant periods of time, the terms in the Lease providing that the City of Fresno would make reasonable efforts to provide Granite Park with recycled water have been infeasible. (*Id.*)

During a meeting on March 5, 2019, defendant Schaad utilized the draft audit as "proof" of CVCSF's noncompliance with the Lease and Service Agreement.  (*Id.* at ¶ 35.)  In follow-up meetings between the individual defendants and plaintiffs, the individual defendants asserted that CVCSF was in default of the Lease and Service Agreement by relying on "unrealistic and unnecessary projections of the Granite Park project's future development."  (*Id.*)  These efforts have been allegedly motivated by defendants' "collective agenda" to reclaim Granite Park in order to lease it to the Fresno Football Club ("FFC"), a minor league affiliate of Major League Soccer.  (*Id.* at ¶ 37.)  To that end, the individual defendants and other City of Fresno staff met with FFC representatives "numerous times" regarding the Granite Park site and "had been observed driving around the Granite Park area surveying the complex."  (*Id.*)

Plaintiffs allege that the January 2019 release of the audit report to the public has had "very negative economic" impacts on plaintiffs.  (*Id.* at ¶ 32.)  Plaintiff Frazier has been denied

loans for other projects based on the negative press surrounding the release of the report, and plaintiff CVCSF has lost tournament revenue due to a reduction in bookings for sports tournaments.  (*Id.*)  Plaintiffs estimate that their total financial losses are $4,350,000 for Mr. Frazier and $6,750,000 for CVCSF.  (*Id.*)  In addition, plaintiffs allege that defendants' conduct has devalued their property interests in the Lease (including its mandatory and conditional purchase rights), damaged their abilities to pursue and profit from their businesses, and impaired their abilities to profit from business opportunities unrelated to Granite Park.  (*Id.* at ¶ 39.)

Based on the foregoing allegations, plaintiffs assert the following claims:  (1) unconstitutional defamation, brought under 42 U.S.C. § 1983 on behalf of plaintiffs against all defendants; (2) First Amendment retaliation, brought under 42 U.S.C. § 1983 on behalf of plaintiffs against all defendants; (3) discriminatory denial of contract rights, brought under 42 U.S.C. §§ 1981, 1983 on behalf of plaintiff CVCSF against all defendants; (4) breach of contract under California law, brought on behalf of plaintiff CVCSF against defendant City of Fresno; and (5) breach of the covenant of good faith and fair dealing under California law, brought on behalf of plaintiff CVCSF against defendant City of Fresno.  (*Id.*)

Plaintiffs filed their complaint in this court on July 31, 2020.  (Doc. No. 1.)  On August 25, 2020, defendants filed the pending motion to dismiss plaintiffs' complaint.  (Doc. No. 6.)  On November 5, 2020, plaintiffs filed an *ex parte* application for an extension of time to file an opposition to defendants' motion to dismiss, which this court granted on November 6, 2020. (Doc. Nos. 11, 12.)  On November 9, 2020, plaintiffs filed their opposition to the pending motion to dismiss.  (Doc. No. 13.)  On November 24, 2020, defendants filed their reply thereto.  (Doc. No. 15.)

## LEGAL STANDARD

### A.    Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

6

F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

**ANALYSIS**

Defendants argue that several claims set forth in plaintiffs' complaint must be dismissed pursuant to Federal Civil Procedure Rules 12(b)(1) and 12(b)(6).  (Doc. No. 6-1 at 11.) Specifically, defendants argue that:  (i) plaintiff Frazier does not have standing to pursue his

claims under 42 U.S.C. § 1983, (ii) plaintiffs have not sufficiently stated a claim for unconstitutional defamation in violation of their due process rights; (iii) plaintiff CVCSF has not sufficiently stated a claim for violation of 42 U.S.C. § 1981; (iv) plaintiffs' state law claims are time-barred due to plaintiffs' failure to comply with the California Government Tort Claims Act; and (v) plaintiffs' cause of action for breach of the implied covenant of good faith and fair dealing is duplicative of their cause of action for breach of contract. (*Id.*)  In opposition to defendants' motion to dismiss, plaintiffs reject each of defendants' arguments and assert that the pending motion to dismiss should be denied in its entirety. (Doc. No. 13 at 24.)  In reply, defendants assert that plaintiffs' opposition ignores operative facts and that the law supports a partial dismissal of plaintiffs' complaint. (Doc. No. 15 at 2.)

The court will address the parties' arguments in turn.

**A.     Claims Brought by Plaintiffs Frazier and CVCSF**

Plaintiff Frazier joins plaintiff CVCSF in two claims brought against defendants: (1) unconstitutional defamation under 42 U.S.C. § 1983, brought against all defendants, and (2) First Amendment retaliation under 42 U.S.C. § 1983, brought against all defendants. (Doc. No. 1 at 13, 16.)  Regarding plaintiffs' claim for unconstitutional defamation, plaintiffs allege that defendants made a false representation by designating the draft audit as final and that plaintiffs have suffered injury as a result. (Doc. No. 1 at 13–14.)  Regarding their claim for First Amendment retaliation, plaintiffs assert that defendants retaliated against them for exercising their First Amendment rights to "petition the government for redress, to protest government impropriety, and to criticize government officials." (Doc. No. 1 at 17.)

Defendants contend that plaintiff Frazier lacks standing to pursue both of his claims brought under 42 U.S.C. § 1983. (Doc. No. 6-1 at 11.)  In addition, defendants argue that plaintiffs have failed to state a claim for unconstitutional defamation under 42 U.S.C. § 1983. (*Id.* 18.)  Apart from their arguments that plaintiff Frazier lacks standing, defendants do not seek the dismissal of plaintiffs' claim for First Amendment retaliation under 42 U.S.C. § 1983. (*Id.* at 11.)

/////

/////

1.   Whether Plaintiff Frazier has Standing to Bring Claims Under 42 U.S.C. § 1983
for Both Unconstitutional Defamation and First Amendment Retaliation

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975.)  Each form of relief sought requires a separate showing of standing.  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000); *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*); *see also Haro v. Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2013).  Two types of standing are relevant to this inquiry:  (1) Article III standing, "which enforces the Constitution's case-or-controversy requirement," and (2) prudential standing, which has traditionally encompassed "at least three broad principles," including "the general prohibition on a litigant raising another person's legal rights."[2]  *Lexmark*

---

[2]  In *Lexmark*, the Supreme Court clarified that the label of "prudential standing" is a "misnomer as applied to the zone-of-interests analysis," under which courts must use traditional tools of statutory interpretation to determine whether Congress has authorized a particular class of persons to sue under a statute.  *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).  However,  the Supreme Court in *Lexmark* left the prudential doctrine of third-party standing unaffected, noting that "[t]he limitations on third-party standing are harder to classify . . . . This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day."  *Id.* at 127 n.3.  Third-party standing is squarely at issue in this case, where defendants argue that, in essence, plaintiff Frazier's § 1983 claims are an improper attempt to assert the rights of plaintiff CVCSF.  (Doc. No. 6 at 15–17); *see Barrows v. Jackson*, 346 U.S. 249, 255 (1953) (describing the general rule that "one may not claim standing . . . to vindicate the constitutional rights of some third party"); *Warth*, 422 U.S. at 499 ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Accordingly, and consistent with the approach followed by other district and circuit courts after *Lexmark*, the court will continue to analyze defendants' arguments related to this issue within the context of prudential standing.  *See, e.g.  Calista Enterprises Ltd. v. Tenza Trading Ltd.*, No. 3:13-cv-01045-SI, 2014 WL 3695487, at *6, *6 n.7 (D. Or. July 24, 2014) (noting that that court will continue to analyze third-party standing under the framework of prudential standing due to the Supreme Court in *Lexmark* not reaching the issue); *HomeAway Inc. v. City and County of San Francisco*, No. 3:14-cv-04859-JCS, 2015 WL 367121, at *7 (N.D. Cal. Jan. 27, 2015) (declining "to extend *Lexmark* to invalidate a prudential standing doctrine that it explicitly did not reach" and finding that its holding "is consistent with a number of other courts that have interpreted *Lexmark* as leaving the prudential doctrine of third-party standing unaffected"); *Moncier v. Haslam*, 570 Fed. App'x. 553, 556 (6th Cir. 2014) (describing *Lexmark*'s holding as "not relevant to" certain issues of prudential standing, including third-party standing).

9

*Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (internal quotation omitted).  Article III standing requires that "(1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'"  *Bates*, 511 F.3d at 985 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Buono v. Norton*, 371 F.3d 543, 546 (9th Cir. 2004).  Prudential standing requires that "a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  *HomeAway Inc. v. City and County of San Francisco*, No. 3:14-cv-04859-JCS, 2015 WL 367121, at *6 (N.D. Cal. Jan. 27, 2015) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)); *see also Bracamonte v. Probation Dept. of the Cnty. of Sacramento*, No. 2:06-cv-01868-MCE-GGH, 2008 WL 691850, at *2 (E.D. Cal. Mar. 12, 2008).  In light of defendants' arguments, as described below, prudential standing, rather than Article III standing, is placed at issue by the motion pending before the court.[3]

"In general, shareholders of a corporation or members of an LLC lack prudential standing to assert individual claims based on harm to the corporation or LLC in which they own shares."  *Solarmore Management Services, Inc. v. Bankruptcy Estate of DC Solar Solutions*, 2:19-cv-02544-JAM-DB, 2021WL 3077470, at *3 (E.D. Cal. July 21, 2021) (citing *Erlich v. Glasner*, 418 F.2d 226, 227 (9th Cir. 1969)).  "However, a shareholder does have standing where he or she has been injured directly and independently of the corporation."  *Bracamonte*, 2008 WL 691850, at *3 (quoting *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983)).  "The same conduct may result in injury to both the corporation and the individual shareholders."  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002).

/////

---

[3]  Defendants challenge plaintiff Frazier's standing under Federal Rule of Civil Procedure 12(b)(1).  (Doc. No. 6-1 at 14.)  While challenges to a party's Article III standing are appropriate for resolution under Rule 12(b)(1), issues of prudential standing are appropriately resolved under Rule 12(b)(6).  *See Solarmore Management Services, Inc. v. Bankruptcy Estate of DC Solar Solutions*, 2:19-cv-02544-JAM-DB, 2021WL 3077470, at *2 (E.D. Cal. July 21, 2021).

In their pending motion to dismiss, defendants argue that plaintiff Frazier lacks standing to pursue both of his claims brought under § 1983 because the allegations of his complaint establish that "the operative contracts were between the City and CVCSF, . . . the audit pertained to CVCSF's records; and Frazier was acting on behalf of CVCSF in seeking to renegotiate the contract and responding to the audit request." (Doc. No. 6-1 at 16.) Defendants assert that Mr. Frazier's role as an employee and officer of CVCSF does not confer standing upon him to sue for injuries suffered by CVCSF. (*Id.*) Moreover, insofar as Mr. Frazier is a shareholder of CVCSF and thus has an ownership interest in the Granite Park development, defendants argue that "the right of a corporation to bring suit under Section 1983 eliminates the need for recognition of a right in shareholders to bring suit on the corporation's behalf." (*Id.*) Finally, defendants argue that no exceptions to the shareholder standing rule apply here because Mr. Frazier is unable to establish that he has suffered an injury distinct from that allegedly suffered by CVCSF. (*Id.*)

In opposition to the motion to dismiss, plaintiffs argue that defendants disregard various aspects of plaintiffs' complaint that allege injuries applicable to Mr. Frazier specifically and, as such, are distinct from the injuries suffered by CVCSF. (Doc. No. 13 at 12.) For example, plaintiffs assert that in moving for dismissal defendants disregard plaintiffs' contention that the individual defendants insisted that the Granite Park audit have the objective of uncovering proof of unlawful or unethical conduct by Mr. Frazier. (*Id.*) As to plaintiffs' claim for defamation in violation of the constitution, plaintiffs argue that because the draft audit was falsely designated as a final investigation finding and made "harmful findings regarding Mr. Frazier directly that were damaging as to him specifically," Mr. Frazier was an individual target of defamatory statements and consequently has standing to sue as an individual. (Id. at 13.) As to their claim for retaliation in violation of the First Amendment, plaintiffs argue that Mr. Frazier asserted his First Amendment rights as an individual citizen by criticizing defendants, in response was individually targeted by the defendants, and suffered "distinct personal harms" as a result. (*Id.* at 14–15.)

In reply, defendants contend that although plaintiffs state that Mr. Frazier suffered harm individually, plaintiffs "detail no harmful information about Frazier individually" and do not

/////

11

1    allege any special duty owed to Mr. Frazier that would confer standing upon him to bring his

2    claims under § 1983.  (Doc. No. 15 at 2–4.)

3           The court concludes that plaintiff Frazier has sufficiently alleged injuries that are direct

4    and also independent from the injuries allegedly suffered by plaintiff CVCSF and therefore

5    survive the pending motion to dismiss.  The facts in this case are comparable to those in cases in

6    which the Ninth Circuit has found that individual shareholder plaintiffs sufficiently alleged

7    injuries that were direct and independent of the injuries to the corporation.  For example, in

8    *Soranno's Gasco, Inc. v. Morgan*, individual plaintiffs brought suit on behalf of both themselves

9    and the corporation of which they were owners and shareholders, alleging First Amendment

10   retaliation and due process violations.  874 F.2d 1310, 1313–14, 1316 (9th Cir. 1989).  In

11   *Soranno's Gasco, Inc.*, the Ninth Circuit held that the alleged violation of an individual plaintiff's

12   free speech rights, as well as the individual plaintiffs' alleged mental and emotional distress,

13   constituted direct and independent personal injuries sufficient to state a cognizable claim.  *Id.* at

14   1318.  Similarly, in another case the Ninth Circuit has held that the plaintiffs-shareholders'

15   allegations that the defendant violated their First and Fourteenth Amendment rights as

16   individuals, as well as their allegations of emotional distress, conferred standing to bring their

17   civil rights action as individuals.  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th

18   Cir. 2002).

19          Here, plaintiffs allege that due to defendants' conduct, "both Mr. Frazier and CVCSF

20   sustained harm and injury, both to their protected property interests in the Granite Park project,

21   but also their liberty interest in practicing their professions and business."  (Doc. No. 1 at 15, 17.)

22   In addition, plaintiffs allege that Mr. Frazier in particular "sustained general damages, including

23   humiliation, embarrassment, anger, and related emotional distress."  (*Id.*)  These allegations on

24   behalf of plaintiff Frazier are sufficient to adequately plead injuries distinct from those suffered

25   by plaintiff CVCSF.  *See Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1021 (9th

26   Cir. 1983) (finding that "humiliation and embarrassment" caused to an individual plaintiff were

27   "personal to plaintiff and distinct from any injuries suffered by [the corporation]"); *see also*

28   *Riley's American Heritage Farms v. Claremont Unified Sch. Dist.*, No. 5:18-cv-02185-JGB-SHK,

2019 WL 3240105, at *4 (C.D. Cal. Mar. 6, 2019) (holding that an individual plaintiff sufficiently alleged direct and independent injuries where the individual plaintiff alleged retaliation for exercising his First Amendment rights and that defendants' conduct damaged his individual reputation).

2.   Whether Plaintiffs have Stated a Claim for Unconstitutional Defamation under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "The Due Process Clause of the Fourteenth Amendment encompasses two types of protections:  substantive rights (substantive due process) and procedural fairness (procedural due process)." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1099 (E.D. Cal. 2012).  Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  "The right to *procedural* due process prohibits the government from depriving an individual of a liberty or property interest without first following the proper procedures." *Williams v. Price*, No. 1:18-cv-00102-LJO-SAB, 2018 WL 3491681, at *5 (E.D. Cal. July 19, 2018).

"When assessing procedural due process claims under § 1983, [courts] ask whether the State deprived the plaintiff of a constitutional liberty interest, and if so, whether the deprivation's attendant procedures were constitutionally insufficient." *Endy v. County of Los Angeles*, 975 F.3d 757, 764 (9th Cir. 2020).  "A liberty interest may be implicated 'where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him.'" *Id.* (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).  However, "[d]amage to reputation alone is not actionable under § 1983." *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (citation omitted); *see also Paul v. Davis*, 424 U.S. 693, 694 (1976) (holding that

1    defamation by a government official, standing alone, is not actionable under § 1983).  Rather,

2    "procedural due process protections apply to reputational harm only when a plaintiff suffers

3    stigma from governmental action plus alteration or extinguishment of 'a right or status previously

4    recognized by state law.'"  *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir.

5    2009) (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)).  This standard, known as the "stigma-

6    plus" test, requires that a plaintiff demonstrate that (1) "the injury to the plaintiff's reputation was

7    inflicted *in connection with* the deprivation of a federally protected right," and (2) "the injury to

8    reputation *caused* the denial of a federally protected right."  *Hart*, 450 F.3d at 1070.

9            In moving to dismiss this claim, defendants argue that plaintiffs have not properly alleged

10   a stigma-plus violation, asserting that defendants' alleged release of a draft audit does not rise to

11   the level of stigmatizing conduct that courts have found to be necessary for plaintiffs to state a

12   cognizable procedural due process claim.[4]  (Doc. Nos. 6-1 at 22–23; 15 at 6–7.)  Plaintiffs

13   acknowledge that there is no constitutional protection for damage to one's reputation, but counter

14   that they were "both damaged beyond their reputations" due to defendants' alleged defamation;

15   specifically, "the value of their interest in the Granite Park development was diminished, and

16   their mandatory and contingent purchase rights were devalued" and "defendants' false

17   representations impaired Mr. Frazier's and CVCSF's abilities to continue in their chosen

18   professions or businesses, which require financial capability for purposes of obtaining loans and

19   contracts and making financial presentations and projections."  (Doc. No. 13 at 15–16.)  In reply,

20   defendants contend that plaintiffs have not alleged sufficiently stigmatizing events perpetrated by

21   _____

22   [4]  Defendants also argue that plaintiffs have not sufficiently alleged a *substantive* due process
     violation.  (Doc. No. 6-1 at 20–21.)  In their complaint, plaintiffs assert that defendants' alleged
23   actions meet the requirements of the stigma-plus test in part because defendants' allegedly false
     representations impaired plaintiffs' "liberty and property interest[s] protected by the *Substantive*
24   Due [P]rocess Clause of the Fourteenth Amendment."  (Doc. No. 1 at 15 (emphasis added).)
     However, as described above, the "stigma-plus" test applies only to alleged violations of
25   *procedural* due process.  *Endy*, 975 F.3d at 764.  In their opposition to defendants' pending
     motion to dismiss, plaintiffs clarify that "this claim is based in the Procedural Due Process
26   Clause" without further reference to substantive due process.  (Doc. No. 13 at 16.)  Therefore, the
     court will assume that plaintiffs' reference to substantive due process rights in their complaint
27   was in error and thus concludes that it need not address defendants' argument that plaintiffs have
     failed to allege a substantive due process violation.
28

                                                    14

1  defendants, and to the extent that plaintiffs have allegedly been damaged by their inability to

2  obtain loans and contract with third parties, any such injury was caused by third parties rather

3  than by the government.  (Doc. No. 15 at 8.)

4       The court finds plaintiffs' arguments in this regard to be unpersuasive.  Plaintiff is correct

5  that stigmatizing statements which cause an injury to a plaintiff's employment opportunities may,

6  in some circumstances, rise to the level of a constitutional violation.  *See, e.g.*, *Tibbetts v.*

7  *Kulongoski*, 567 F.3d 529, 535–36 (9th Cir. 2009).  However, "[s]tigmatizing statements that

8  merely cause reduced economic returns and diminished prestige, but not permanent exclusion

9  from . . . gainful employment within the trade or profession do not constitute a deprivation of

10  liberty."  *Blantz v. California Dept. of Corrections and Rehabilitation, Div. of Correctional*

11  *Health Care Servs.*, 727 F.3d 917, 925 (9th Cir. 2013) (internal quotation and citation omitted).

12  That is, "the liberty interests protected by the Fourteenth Amendment are implicated only when

13  the government's stigmatizing statements effectively . . . bar [the plaintiff] from *all* employment

14  in her field."  *Id.*  Thus, it is immaterial that plaintiff Frazier has allegedly been "denied loans for

15  other projects based upon the bad press associated with the draft audit report" or that plaintiff

16  CVCSF has "lost tournament revenue due to a reduction in bookings," because plaintiffs have

17  pled no facts suggesting that they are barred from all employment in their fields.  (Doc. No. 1 at

18  ¶ 32); *see also WMX Technologies, Inc. v. Miller*, 197 F.3d 367 (9th Cir. 1999) (finding that an

19  allegedly defamatory report that "arguably . . . damaged [plaintiff's] reputation and could affect

20  its business relations with others and thus the goodwill of the business . . . . would present a

21  classic case for a state court defamation action, but not an action under § 1983").  Similarly, to the

22  extent that plaintiffs argue that the value of their Granite Park purchase rights were diminished,

23  they cite no authority for the proposition that a—potentially temporary—diminution in plaintiffs'

24  purchase rights some two-decades in the future is a constitutional violation subject to vindication

25  under 42 U.S.C. § 1983.

26       Moreover, the court notes that "the 'stigma-plus' test requires that the defamation be

27  accompanied by an injury directly caused by the Government, rather than an injury caused by the

28  act of some third party."  *WMX Technologies, Inc. v. Miller*, 80 F.3d 1315, 1320 (9th Cir. 1996),

*appeal dismissed on other grounds*, 103 F.3d 1133 (9th Cir. 1997) (*en banc*); *Chaudhry v. Angell*, No. 1:16-cv-01243-SAB, 2021 WL 4461667, at *48 (E.D. Cal. Sept. 29, 2021) ("[T]he defamation must be accompanied by an injury directly caused by the government, not injury caused by a third party *that is reacting to the government's defamatory statement*) (emphasis added).[5]  In this case, plaintiffs allege that it was Mr. Franco who "immediately" posted the audit on social media "attacking Mr. Frazier and CVCSF's Granite Park Project," and subsequently, the audit was "prominently reported in the Fresno Bee."  (Doc. No. 1 at ¶ 30.)  Plaintiffs have failed to allege facts which, if proven, would demonstrate that the injuries they claim—namely, "negative economic impacts" on plaintiffs' business dealings with third parties—were directly caused by the government action alleged in this case, rather than being caused by the actions of third parties such as Mr. Franco, local journalists, or parties who declined to engage in business with plaintiffs.  (Doc. No. 1 at ¶ 32); s*ee also Lemad Corp. v. Calfee*, No. 2:08-cv-0923-PHX-ECV, 2010 WL 11519238, at *4 (D. Ariz. Feb. 23, 2010) (finding insufficient state action on which to base a due process claim where a plaintiff "seek[s] recovery based not on direct governmental action . . . but rather based on the decisions of third parties . . . in reactions to statements made by [the defendant local government official]");  *Milstead v. Begich*, No. 3:08-cv-0100-RRB, 2009 WL 10676007, at *3 (D. Ala. Jan. 6, 2009) ("[Plaintiff's] injuries, though arguably related to the statements of [defendant government officials], were the result of the actions of third parties:  her [private employer] and [industry members]"); *Hardaway v. California Dept. of Corrections*, No. 97-cv-0311-FMS-PR, 1997 WL 61366, at *1 (N.D. Cal. /////

---

[5]  As described above, a plaintiff may be able to allege a constitutional violation where a public entity's defamation causes a total bar on employment in that plaintiff's chosen field, which may involve employment decisions made by third parties.  *See, e.g. Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 n.13 (9th Cir. 1976) ("[A] label which would prevent an individual from practicing his chosen profession at all may have consequences so severe that liberty would be infringed"); *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir. 1981) ("To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities").  However, plaintiffs have not alleged facts supporting such a narrowly confined claim here and it appears clear to the court that given the allegations of the complaint before it that plaintiffs could in good faith allege no such facts.

16

Feb. 5, 1997) ("Plaintiff's allegations that the alleged defamation somehow has precluded him from getting a job, i.e., being hired by third persons, does not meet the [stigma-plus] test.").

Here, plaintiffs do not appear to allege injury caused directly by defendants as opposed to injury caused to them by third parties. Indeed, as to plaintiffs' interactions with defendants following the alleged defamation, plaintiffs assert that although they have been unsuccessful in renegotiating the fees under the Service Agreement, the parties' Lease and Service Agreement *remain in effect*, under which plaintiff CVCSF continues to occupy Granite Park and receives a $150,000.00 annual fee from defendant City of Fresno. (Doc. No. 1 at ¶¶ 35, 39.) Accordingly, even assuming plaintiffs were able to allege an injury to their federally protected rights, their claim nonetheless fails because the alleged injury they suffered was not caused directly by the government, but by the reaction of third parties to the alleged defamation.[6]

Accordingly, the court will dismiss plaintiffs' defamation claims brought pursuant to § 1983 against all defendants due to their failure to state a claim and will do so with prejudice.

**B.    Whether Plaintiff CVCSF has Failed to State a Claim under 42 U.S.C. § 1981 for Discriminatory Denial of Contract Rights**

Title 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." The Supreme Court has held that 42 U.S.C. § 1983 "is the exclusive federal damages remedy for the violations of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 735 (1989). "A plaintiff asserting a § 1981 claim must initially identify an impaired contractual relationship under which the plaintiff has rights." *Astre v. McQuaid*, 804 Fed. App'x. 665, 666 (9th Cir. 2020).[7] In

---

[6]  Because the court concludes that plaintiff has not adequately alleged a stigma-plus violation under the Due Process Clause of the Fourteenth Amendment, the court need not reach the parties' arguments regarding whether defendants' alleged designation of a draft audit as "final" constitutes a "statement" for purposes of stating a cause of action for defamation. (*See* Doc. Nos. 6-1 at 23; 13 at 16–18; 15 at 7–8.)

[7]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

17

addition, a plaintiff must "plausibly allege that the defendant impaired that relationship on account of intentional discrimination." *Id.* Thus, to prevail on a § 1981 discrimination claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Natl. Ass. Of African American-Owned Media*, --- U.S. ----, 140 S. Ct. 1009, 1019 (2020).

Plaintiff CVCSF alleges that racial animus was the but-for cause of defendants' conduct because:

> Specifically, there has not been a similarly situated Caucasian or majority owned business subject to audit for requesting renegotiation of an agreement that was clearly nowhere near as profitable as anticipated. There also has not been an audit of a project managed by a similarly situated Caucasian or majority owned business that in reality was an effort to document law or ethics violations. Nor has any similarly situated Caucasian or majority owned business had an incomplete, substandard draft audit published that was likely damaging in nature. There also has not been a similarly situated Caucasian or majority owned business that has had an investigation suspended by the City of Fresno nonetheless referred to the Fresno County District Attorney's Office for possible criminal investigation. There also has not been a Caucasian or majority owned business with a similar 25-year contract that was attempted to be broken in favor of a business owned by persons of another race. Finally, there has not been a Caucasian or majority owned business similarly disparaged in the media on the basis of an incomplete investigation and other untruths that were known to be similarly harmful to the subject's reputation and business prospects.

(Doc. No. 1 at ¶ 62.)

In their motion to dismiss, defendants argue that "the facts alleged by Plaintiffs and the matters subject to judicial notice negate any implication of racial discrimination," because, *inter alia*: there are no allegations of defendants making bigoted statements toward plaintiffs or having discussions about race; the City of Fresno entered into the Lease and Service Agreement in December 2015 with knowledge of plaintiff Frazier's identity as an African-American man; the Service Agreement gave the City of Fresno the right to audit plaintiff CVCSF; the Fresno City Attorney publicly stated that CVCSF was in substantial compliance with the Lease and Service Agreement; and the City of Fresno has engaged in various business dealings between January

/////

/////

18

1   2015 and April 2020 that benefit entities with which plaintiff Frazier has been associated.  (Doc.

2   No. 6-1 at 27–28.) [8]

3          Plaintiff CVCSF counters that the above-excerpted allegations are sufficiently detailed to

4   survive a motion to dismiss and cites a vacated Ninth Circuit decision for the incorrect

5   proposition that plaintiff CVCSF need not plead that discriminatory intent was the but-for cause

6   of its injury.  (Doc. No. 13 at 20.)  In reply, defendants argue that plaintiff CVCSF's comparison

---

[8]  Defendants also filed a request for judicial notice of twenty-three exhibits.  (Doc. No. 6-2.)
These requests can be summarized as falling under the following categories:  (1) documents
concerning litigation in the Fresno County Superior Court in which plaintiff Frazier and Mr.
Franco were parties (Exhs. A–C); (2) defendant City of Fresno's response to Mr. Franco's Public
Records Act requests (Exhs. D–F); (3) plaintiff CVCSF's notice of government claims and
defendant City of Fresno's response letter thereto (Exhs. G–I); (4) a biography of plaintiff Frazier
found online (Exh. J); (5) City Council Action and Staff Reports spanning October 2014 through
April 2020 for the City of Fresno and a Fresno City Planning Commission report (Exhs. K, M, O,
Q–T, V–W); and (6) California Secretary of State records for business entities with which
defendants allege that plaintiff Frazier is or was affiliated (Exhs. L, N, P, U).  An online
biography of plaintiff Frazier on a private company's webpage is not a matter of public record
and cannot be "accurately and readily determined from sources whose accuracy cannot be
reasonably questioned."  Fed. R. Evid. 201(b).  Similarly, the online biography is not
incorporated by reference into plaintiffs' complaint.  *See United States v. Ritchie*, 342 F.3d 903,
908 (9th Cir. 2003).  Accordingly, defendants' request for judicial notice of the online biography
of plaintiff Frazier is denied.  Documents that constitute "matters of public record" may be
judicially noticed.  Fed. R. Evid. 201(b); *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048,
1052 (9th Cir. 2007) (citing Fed. R. Evid. 201(b)); *see also Mission Linen Supply v. City of
Visalia*, No. 1:15-cv-0672-AWI-EPG, 2019 WL 446358, at *5 (E.D. Cal. Feb. 5, 2019), *aff'd on
other grounds*, 817 Fed. App'x. 336 (9th Cir. 2020) (finding that responses to Public Records Act
requests "are the type of government document that may be judicially noticed"); *Rogers v. Cal.
Highway Patrol Officer Macias*, 5:19-cv-0479-JGB-KK, 2019 WL 4540119, at *1 n.2 (C.D. Cal.
Apr. 25, 2019) (taking judicial notice of plaintiff's government claim and the state government's
attendant denial letter); *Joana Corp. v. City of Sunnyvale, CA*, No. 5:17-cv-00956, 2017 WL
5194513, at *4 (N.D. Cal. Nov. 9, 2017) (taking judicial notice of a staff report to the city mayor
and council); *Rhodes v. Sutter Health*, No. 2:12-cv-0013-WBS-DAD, 2012 WL 662462, at *3
(E.D. Cal. Feb. 28, 2012) (taking judicial notice of corporate records filed with the Secretary of
the State of California).  While plaintiffs oppose defendants' request for judicial notice, they do
not allege that any of defendants' exhibits contain falsehoods or are otherwise fraudulent, they
make no specific arguments for why defendants' request is a "clearly inappropriate application of
judicial notice," and the case they cite in support of their contention is inapplicable.  *Hsu v. Puma
Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1280–85 (C.D. Cal. 2016) (describing common
misconceptions regarding the concept of judicial notice and declining to take judicial notice of
various exhibits that were not public records and were not derived from sources whose accuracy
could not reasonably be questioned).  Accordingly, the court denies defendants' request for judicial
notice of the online biography of Mr. Frazier and grants defendants' request for judicial
notice of the remaining exhibits.  (Doc. No. 6-2, Exhs. A–I, K–W.)

to the treatment of "unidentified 'Caucasian' businesses"—without mention of "any specific comparators" and without alleging any facts indicating that the defendants "knew of the comparator entity's racial identity" or that "the comparator entity was similar in all material aspects"—fails to adequately allege that that race was the but-for cause of plaintiff CVCSF's alleged injuries.  (Doc. No. 15 at 9–11.)

The court acknowledges that the scourge of racial discrimination does not only rear its insidious head through "statements involving bigotry . . . or discussions involving race."  (Doc. No. 6-1 at 27); *see Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) ("Although 'naked allegations' of discriminatory intent are too conclusory to survive a motion to dismiss, discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence.  An allegation that similarly situated non-minorities received better treatment could . . . set the predicate for establishing the section 1981 claim.") (internal quotation and citations omitted).  However, the allegations of plaintiffs' complaint do not adequately assert that race was the but-for cause of defendants' conduct.  The claimed lack of a "similarly-situated Caucasian or majority owned business" subject to the same exact conduct by defendants under this very specific set of circumstances is not a sufficient basis upon which to bring such a claim, where under the allegations of the complaint it is unclear whether there even exists a "similarly-situated Caucasian or majority owned business" to which plaintiff CVCSF could meaningfully draw a comparison.  (Doc. No. 1 at ¶ 62); *compare Body by Cook, Inc.*, 869 F.3d at 387 ("Plaintiffs make only generalized allegations regarding Defendants' alleged disparate treatment of [plaintiff] versus non-minority-owned shops.  These allegations are not specific enough to plead discriminatory intent.  They fail to identify specific instances when [plaintiff] was refused a contract but a similarly situated non-minority owned body shop was given a contract."), *with Bivett Brackett v. American Airlines Group, Inc.*, No. 4:21-cv-02681-HSG, 2022 WL 282529, at *4 (N.D. Cal. Jan. 31, 2022) (finding that the plaintiff had "thinly but plausibly" stated a claim for a violation of 42 U.S.C. § 1981 where she alleged that agents of the defendant airline prevented her from boarding a flight despite allowing Caucasian and Hispanic passengers to board the same flight with luggage the same size as plaintiff's).

According to plaintiffs, "Mr. Frazier and CVCSF also learned that [defendants] had a collective agenda to try to reclaim Granite Park in order to lease it to the Fresno Football Club ("FFC"), a minor league affiliate of Major League Soccer." (Doc. No. 1 at ¶ 37.) Plaintiff CVCSF alleges that defendants "actively sought to break [the contracts between the parties] in favor of entering into a competing arrangement with FFC." (*Id.* at ¶ 70.) Plaintiff CVCSF implies (without explicitly naming FFC) that FFC was at the time "owned by persons of another race," but does not allege the racial identity of FFC's ownership or present any specific allegations that FFC's ownership's different racial identity motivated defendants' actions. (*Id.* at ¶ 62.)

As pled, plaintiff CVCSF's allegations that defendants did not adequately perform their contractual duties because they instead wished to contract with another entity—even when construed in the light most favorable to plaintiff—do not suggest that but-for defendants' racial animus, defendants would have conducted themselves differently in their dealings with plaintiff CVCSF. Rather, without more, these allegations suggest only a plausible inference that race could have played "some role" in defendants' decision-making process, which is insufficient to meet the requisite but-for causation standard. *See Comcast*, 140 S. Ct. at 1013; *see also Newman v. Google LLC*, No. 3:20-cv-04011-LHK, 2021 WL 2633423, at *6 (N.D. Cal. June 25, 2021) ("Plaintiffs' personal belief of discrimination, without any factual support, is insufficient to satisfy federal pleading standards.") (internal quotation omitted). Thus, plaintiff CVCSF has not sufficiently pled a cause of action for discriminatory denial of contract rights against defendants under 42 U.S.C. §§ 1981, 1983 and, accordingly, the court will dismiss this claim.

## C.   Whether Plaintiff CVCSF's State Law Claims Against Defendant City of Fresno are Barred by the Statute of Limitations

Under the California Tort Claims Act, "no suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity[.]" Cal. Gov. Code § 945.4. "A suit for 'money or damages' includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in 'tort, contract or some other theory.'" *Hart v. Alameda County*, 76 Cal. App. 4th 766, 778 (1999) (citation omitted); *see*

1     *also City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007).  A plaintiff must file an

2     action in court "no later than six months after the date [a notice of rejection] is personally

3     delivered or deposited in the mail."  Cal. Gov. Code § 945.6; *see also State of California v.*

4     *Superior Court*, 32 Cal. 4th 1234, 1239 (2004) ("[F]ailure to timely present a claim for money or

5     damages" or "to allege facts demonstrating or excusing compliance with the claim presentation

6     requirement subjects a claim against a public entity to a demurrer for failure to state a cause of

7     action."); *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1044 (E.D. Cal. 2010) ("The six month period

8     set forth in Section 945.6(a)(1) is mandatory and strict compliance is required.").

9          In their complaint, plaintiffs allege that they submitted timely claims for damages in

10    compliance with California Government Code §§ 900, *et seq.*, that their claims were never

11    rejected, and consequently, the present suit is timely brought within the two-year statute of

12    limitations proscribed by California Government Code § 946(a)(2) for actions where written

13    notice is not given by the public entity.  (Doc. No. 1 at ¶ 3.)  In its motion to dismiss, defendant

14    City of Fresno asserts that it denied both of plaintiff CVCSF's claims on August 15, 2019, served

15    by mail to the address listed on the claims.  (Doc. No. 6-1 at 31.)  In support of this contention,

16    defendant City of Fresno attaches three exhibits of which the court took judicial notice as

17    described above:  (1) plaintiff CVCSF's original claim for damages, dated July 3, 2019; (2)

18    plaintiff CVCSF's amended claim for damages, dated July 17, 2019; and (3) a notice letter from

19    defendant City of Fresno to plaintiffs dated August 15, 2019, rejecting CVCSF's claim for

20    damages, along with a proof of service document signed by a Senior HR Technician stating that

21    the signatory served the aforementioned notice of rejection of claim document by placing it in a

22    sealed envelope and mailing it to Mr. Frazier at CVCSF.  (Doc. No. 6-2, Exhs. G–I.)

23    Accordingly, defendant City of Fresno argues that plaintiff CVCSF's state law claims are subject

24    to dismissal because plaintiff CVCSF did not file the instant lawsuit within six months of the City

25    of Fresno serving its notice of rejection.  (Doc. No. 6-1 at 31.)  Plaintiff CVCSF counters that it

26    never received the notice of denial, and thus, its complaint was timely filed.  (Doc. No. 13 at 21.)

27    In reply, defendant City of Fresno asserts that the six-month statute of limitations period is

28    /////

1    triggered by the public entity mailing the notice of rejection, rather than a prospective plaintiff

2    receiving the notice of rejection.  (Doc. No. 15 at 14.)

3          Defendant City of Fresno is correct in its assertion that "it is the mailing of the rejection

4    notice that triggers the running of the six-month limitation period."  *Green v. Chakotos*, No. 1:11-

5    cv-01611-LJO-DLB, 2014 WL 3563314, at *5 (E.D. Cal. July 18, 2014), *report and*

6    *recommendation adopted*, No. 1:11-cv-01611-LJO-DLB, 2014 WL 3927229 (E.D. Cal. Aug. 11,

7    2014).  It is immaterial that plaintiff CVCSF alleges that it never received the notice of claim

8    rejection.  *See, e.g.*, *Him v. City and County of San Francisco*, 133 Cal. App. 4th 437, 445 (2005)

9    (noting that "the Legislature has placed upon the claimant the risk that a properly mailed notice of

10   claim rejection is not delivered due to an error," but that claimants have the opportunity to protect

11   against this risk because claimants may "inquire about the denial and determine, thereby, the

12   limitations period" if they have not received a claim rejection after the 45-day period under which

13   public entities are required to act on a claim); *Valderrama v. California*, No. 2:19-cv-01389-

14   MCE-EFB, 2020 WL 2556948, at *4 (E.D. Cal. May 20, 2020) ("Even proof of non-receipt

15   would not carry the day since because it would still be 'legally insufficient' to 'negat[e] the six-

16   month statute of limitations defense'") (citation omitted).

17         The exhibits submitted by defendant City of Fresno reflect that the City of Fresno's

18   rejection letter was placed in the mail on August 15, 2019.  (Doc. No. 6-2, Exh. I, at 41.)

19   Therefore, the six-month time period was triggered on that date and plaintiff CVCSF's state law

20   claims submitted as part of the complaint filed in this court on July 31, 2020 are untimely.  (*See*

21   Doc. No. 1.)

22         The court will therefore dismiss plaintiff CVCSF's fourth and fifth causes of action.[9]  The

23   court will, however, grant plaintiffs leave to amend in this regard if they can, in good faith, allege

24   facts demonstrating that waiver, estoppel, or a tolling period applies to the six-month filing

25   deadline here.  *Julian v. City of San Diego*, 183 Cal. App. 3d, 176 (1986) ("Failure to commence

26   _____

27   [9]  Because the court finds that these causes of action are time-barred, the court need not reach
     defendant City of Fresno's argument that plaintiff CVCSF's claim for breach of the implied
     covenant of good faith and fair dealing is duplicative of plaintiff CVCSF's claim for breach of

28   contract.  (Doc. No. 6-1 at 31–33.)

1  an action within the prescribed period constitutes a valid ground for dismissal, absent waiver,

2  estoppel, or a tolling period.").

3  **D.      Leave to Amend**

4          Plaintiffs have generally requested leave to file a first amended complaint.  (Doc. No. 13

5  at 23.)  "Courts are free to grant a party leave to amend whenever 'justice so requires,' and

6  requests for leave should be granted with 'extreme liberality.'"  *Moss v. U.S. Secret Serv.*, 572

7  F.3d 962, 972 (9th Cir. 2009) (quoting Fed. R. Civ. P 15(a)(2) and *Owens v. Kaiser Found.*

8  *Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).  There are several factors a district court

9  considers in determining whether to grant leave to amend, including undue delay, the movant's

10  bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously

11  allowed, undue prejudice to the opposing party, and futility.  *Brown v. Stored Value Cards, Inc.*,

12  953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Of the

13  factors from *Foman*, the court should particularly consider prejudice to the opposing party.  *Id.*;

14  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

15          There is no indication that allowing amendment in this case would be prejudicial to

16  defendants, and defendants make no argument to that effect.  There is also nothing to suggest that

17  plaintiffs have acted in bad faith, and there have been no other attempts to cure deficiencies by

18  previously allowed amendments.  With the exception of plaintiffs' first cause of action for

19  unconstitutional defamation under 42 U.S.C. § 1983, as to which the court deems that granting

20  leave to amend would be futile for the reasons explained above, plaintiffs will therefore be

21  granted leave to amend.

22                                    **CONCLUSION**

23          For the reasons stated above, defendants' motion to dismiss (Doc. No. 6) is granted in part

24  and denied in part as follows:

25          1.      Defendants' motion to dismiss plaintiff Frazier's causes of action brought under 42

26                  U.S.C. § 1983 for lack of standing is denied;

27  /////

28  /////

24

2.  Plaintiffs' first cause of action for unconstitutional defamation under 42 U.S.C. § 1983 against all defendants is dismissed, with prejudice and without leave to amend, due to plaintiff's failure to state a cognizable claim;

3.  Plaintiff CVCSF's third cause of action for discriminatory denial of contract rights brought under 42 U.S.C. §§ 1981, 1983 against all defendants is dismissed, with leave to amend, for failure to state a claim;

4.  Plaintiff CVCSF's fourth and fifth causes of action for violations of California state law against defendant City of Fresno are dismissed, with leave to amend, for failure to state a claim; and

5.  In the event plaintiffs wish to attempt to cure the deficiencies noted herein, they are granted twenty-one days from the issuance of this order to file an amended complaint.[10]

IT IS SO ORDERED.

Dated:   **April 15, 2022**

_____
UNITED STATES DISTRICT JUDGE

---

[10]  If plaintiffs elect to file an amended complaint, they are reminded that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiffs file an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in any amended complaint, as in an original complaint, each claim must be sufficiently alleged.